## THOMAS M. RILEY v. THE STATE.

1—An indictment for embezzlement laid the ownership of the money in an Express Company. The proof showed that the money was not the property of the Express Company, but belonged to bankers who had bailed it to the Express Company for transportation to a distant point. *Held,* that the Express Company had a qualified property as bailees, on which this kind of felony might be committed, and that the proof sustained the allegation of ownership in the Company.

2—On a charge of embezzlement of coined money, it is not necessary to allege and prove the particular denomination of the several coins composing the amount. And if the indictment do allege the denomination of the gold coins, proof of the embezzlement of gold coin of equal aggregate value, without evidence of the denomination of any of the coins, will suffice when the nature of the case precludes the identification of the pieces.

3—The prisoner, a messenger of an Express Company, received from it a sum of money to be delivered by him to distant consignees; he reported the money stolen from him *en route,* but gave no reasonable account of the pretended theft. *Held,* that these facts raised a presumption that he had appropriated the money to his own use; and this presumption, if not sufficiently countervailed to raise a reasonable doubt of his guilt, warranted the jury to find him guilty of embezzlement. A contradictory and incredible account of the matter given by the prisoner, serves only to strengthen the presumption against him.

4—Embezzlement is nothing more than a species of theft, and is subject to the same law of trial or rules of practice. (On motion for rehearing.)

5—The provisions of the Code of Criminal Procedure are, by its own express injunction, (Paschal's Digest, Art. 2491,) to be liberally construed to the end of preventing, suppressing and punishing crime; and the courts must construe those provisions in conformity with that injunction, howmuchsoever it may invert any common law axiom. (On motion for rehearing.)

Appeal from the Criminal Court of Galveston county. Tried below before the Hon. W. R. Fayle.

The indictment charged that the appellant, on the 15th of January, 1869, was employed as agent of J. S. McKeever & R. Van Slyke, and, as such agent, was entrusted to receive moneys, goods, wares and merchandise to transport in the charge of him, the appellant, from the city of Galveston to the city of Houston, and that on the day and year aforesaid he received and took into his possession two hundred pieces of gold, each of the denomination and value of twenty dollars of the current coin of the United States, commonly called double eagles ; four hundred other pieces of gold, of the denomination and value of ten dollars each, of the same coin, commonly called eagles ; two hundred other gold pieces, five dollars each, same coin ; and one thousand other pieces of gold, one dollar each, same coinage, commonly called gold dollars, for and on account of his employers, McKeever & Van Slyke ; that on the day and year aforesaid, in the county of Galveston, he fraudulently and feloniously embezzled and converted to his own use, without the consent of his said employers, the said specified pieces of gold, of the value aforesaid, of the goods, chattels, personal corporeal property and money belonging to the said McKeever & Van Slyke, etc.

The opinion of this court presents the nature of the case and the salient features of the evidence on which the appellant was convicted, and there appears to be no occasion to detail the facts with greater particularity than given in the opinion. There was no evidence of the denomination of the coin, but there was proof of its aggregate amount—ten thousand dollars. It does not appear that any portion of it was traced or recovered.

*Spencer & Stewart,* for the appellant.—There is a total absence of proof of the embezzlement of the description of coin alleged in the indictment. The evidence at most only goes to the extent that $10,000 in gold was placed in charge of the

defendant, without any evidence whatever of the denomination of the coin. It is not only necessary that the specific species of coin should be laid, but it is also *indispensable* that the evidence should support the indictment, at least as to some of the specific pieces of coin as laid. (2 Bishop on Crim. Law, § 354; Rex v. Furneaux, Russ. & Ry., Rep., 334; Rex v. Tyers, Russ. & Ry. Rep., 402; Rex v. Flower, 5 Barn. & Cres. Rep., 660.)

The evidence not only does not show the ownership of the property in the parties as charged, but on the contrary proves ownership in another.

There is no evidence whatever raising even a legal suspicion against the defendant. Proof of the delivery of the money to the defendant, as servant or agent of the principal, and his failure to deliver it, does not establish a *prima facie* case for the State; but there should also be proof of his appropriation of the money. The declarations of the prisoner the law makes evidence in the case; and a reasonable account by him overcomes a *prima facie* case of guilt. (2 Bishop's Crim. Law, § 360; Rex v. Smith, Russ. & Ry. Rep., 267; Regina v. Norman, 1 Carr. & Marsh. Rep., 501; Rex v. Jones, 7 Carr. & Payne Rep., 834; Thompkins v. Saltmarsh, 14 Sgt. & Rawls, 275; State v. Merrick, 19 Penn., 399; Regina v. Crowhurst, 1 Carr & K., 370; Garcia v. The State, 26 Tex., 210.)

*E. B. Turner*, Attorney General, for the State.

LINDSAY, J.—The prisoner, Thomas M. Riley, who has brought up this appeal, was indicted in the Criminal Court of Galveston county upon a charge of the embezzlement of $10,000 in gold coin, of the property of J. J. McKeever and R. Van Slyke, who composed the company, called the Phœnix Express Company. This money was placed in the possession of the prisoner, who was acting in the capacity of agent, or messenger, of the copartnership of McKeever & Van Slyke, or Phœnix Express Company, to be transported by him on the railroad from Galveston to the city of Houston, in the State of Texas.

He having failed to deliver the money according to the direction of his employers, he was indicted, tried and found guilty by a petit jury, and his punishment was fixed at two years' confinement in the penitentiary of the State. Without a motion for a new trial, the defendant gave notice of appeal, and obtained a certified statement of facts, and upon that statement alone a revision of the verdict of the jury is asked.

It is contended by the counsel for the prisoner that as the money was shown by the evidence to belong to Ball, Hutchings & Co., who had consigned it to Adams & Hearn, of Bryan, to be transported by the Phœnix Express Company, composed of J. J. McKeever & R. Van Slyke, to the town of Bryan, in the State of Texas, the charge in the indictment that it was the property of McKeever & Van Slyke, was not supported by proof of property in Ball, Hutchings & Co. This is not a legal sequence from the facts stated and proved on the trial. Though the absolute right of property might be in Ball, Hutchings & Co., there was a qualified property in McKeever & Van Slyke, of which theft, or any other felonious act in relation to it, might be the predicate as against them. A felony may be committed, as well upon the qualified as upon the absolute property in personalty. McKeever & Van Slyke, from the proof, were at least the bailees of Ball, Hutchings & Co., and possessed an interest which the law equally protects against knavery and crime, as that of the absolute owner.

Under an indictment for an offense of this character, the specific allegation and proof of the particular description of coin were entirely unnecessary. The accused admitted the trust committed to his hands of a determinate value of gold coin; and from the nature of the transaction no proof could be adduced of the identity, and the allegation was wholly unimportant.

The reception of the money as agent or messenger of the Phœnix Express Company, or of the copartnership of McKeever & Van Slyke, and the failure to give even a feasible account of the money of his employers which had been

entrusted to his care, raise a presumption in law of its misapplication, or appropriation to his own use. And unless he could counteract this presumption by satisfactory explanations, or by facts and circumstances sufficient to create a reasonable doubt of his guilt, the jury would be warranted in finding a verdict against him upon a charge of embezzlement. Such explanation seems not to have been given; nor were such facts and circumstances made manifest upon the trial.

The facts proven on the trial tended most strongly to intensify this presumption of the law. As agent, or messenger, it appears he received the money in the morning; it was deposited forthwith in the chest prepared for the transportation of valuables by the railway. It was locked up; the messenger had the key. It was carried by a drayman, the prisoner accompanying it, to the railroad depot. It was transferred by him and the drayman to the express car, where, by the regulations of the company, it was the duty of the agent, or messenger, to remain with it. His own account of the matter, however, is: that, after it was placed in the car, he left the car and went into the depot office, just opposite the door of the car, where he remained about twenty minutes, and when he returned he saw that the chest was unlocked; and, yet, incredible to tell, his curiosity was not excited, his suspicion was not sufficiently aroused to prompt him to make an examination to see that all was safe. And although, as it appears by other proof, that he delivered a way-package of money, which he must have taken from the chest, he made no discovery of the abstraction of the money bags until he reached Houston, where the contents of the chest were checked over to the agent on that part of the road from Houston to Bryan, the point of consignment of the money. Such an incredible, contradictory and improbable story as the prisoner told of the matter, to account for the disappearance of the money, serves only still more to fortify the presumption of law raised against his fidelity as an agent.

This court can see no good and sufficient reason for disturb-

ing the finding of the jury, and the judgment of the court: below is affirmed and the case remanded, with an order to carry into execution the sentence of the law.

Affirmed.

_Spencer & Stewart_, for appellant, on the rendition of the foregoing opinion, applied for a rehearing, urging the following grounds, with others not necessary to be presented:

1. The indictment in this case is not for theft, under Art. 2423, Pas. Dig., but is an indictment for embezzlement, under Art. 2421, Pas. Dig. Hence, in indictments for theft, an allegation of a qualified property in a person might be sufficient, for by the express letter of the statute, "it is not necessary, in order to constitute theft, that the possession and ownership of the property be in the same person at the time of taking." (Art. 2386.) And in the very definition of theft (Art. 2381); the statute expressly provides that "the taking of personal property belonging to another, from his possession, or from the possession of some person holding the same for him," etc., constitutes theft. But we have no such statute relating to embezzlement by an agent or clerk. An indictment might have been drawn against the defendant as for theft under Art. 2423, and a qualified property and possession laid in the Phœnix Express Company and an absolute property in Ball, Hutchings & Co. But such is not the present indictment, and it is most respectfully and urgently and confidently submitted that the proof in this case is wholly insufficient under the present indictment. If the proof should establish the defendant's guilt of theft, he surely could not be convicted for that offense under the present indictment for embezzlement.

That the distinction and difference in Arts. 2421, 2423, Paschal's Digest, may be the more apparent: suppose the prisoner to have been acquitted under the indictment drawn under the first of said articles, such acquittal could not be plead in bar to an indictment drawn under the second one of said articles.

It must also be borne in mind that embezzlement is not a

common law offense, but is purely the creature of the statute, both in England and America, and of no very remote origin. The offense of embezzlement, created by the statute, was at common law a mere breach of trust. Hence, we must look to our statute alone in all trials for this offense. The statute, then, in defining the offense, uses this language: "If any officer, agent," etc., or "any bailee of money," etc., "shall embezzle or fraudulently misapply or convert to his own use, without the consent of his principal or employer, any MONEY OR PROPERTY OF SUCH PRINCIPAL OR EMPLOYER," etc.

By the statute, then, the *money must be the property of his principal* or *employer*, and not the property of *any other person.* In construing the statute, the language used is to be construed according to its common and ordinary signification. Now, what is the ordinary and common meaning of the terms *" the money of his principal or employer."* Evidently they mean that the money should be the absolute property of such principal or employer; that he should be the owner thereof, and not the mere bailee or possessor of the property, without any ownership thereof, in the ordinary acceptation of those words. In the case at bar, the proof was that the money was the property of Ball, Hutchings & Co., and delivered to Van Slyke & McKeever for transportation; whereas the indictment laid the property in Van Slyke & McKeever. How, then, can it be said that the proof sustains this material allegation of the indictment—unless by giving a forced, unnatural, uncommon and unusual construction to these words of the statute: *" the money of such principal or employer."*

1. We must most respectfully invite the attention of your honor to some other points; and they are these: The possession of the money or property of his principal or employer, by an agent or bailee, although unaccounted for by such agent or bailee, raises in law no presumption of guilt of embezzlement. (See Rex v. Smith, Russell & Ryan, p. 267.)

The court, composed of eleven judges, use this language: "That the conviction was wrong, on the ground that there was

XXXII—48.

not sufficient evidence of the prisoner's having embezzled the money; the fact of not having paid the money over to the collector, not being evidence of actual embezzlement, it only negatived the application of the money in the manner directed."

The "indictment must describe, according to the fact, some of the identical goods or money.   So the evidence must establish the embezzlement of the specific articles described."   (2 Bishop on Criminal Law, § 358, bottom p. 199; Rex v. Tyers, Russell & Ryan, 402.)

3. Under our statute it is not only necessary that the particular species of coin should be laid, but some of the pieces must be proved as laid, and it is not sufficient to prove a general sum in mass.

In Regina v. Bond, 1 Cen. Br. Cas. R., 517, the court say: "So, where the charge in an indictment was of stealing seventy pieces of the current coin called sovereigns, and one hundred and forty pieces called half-sovereigns, and five hundred pieces called crowns, it was held that it was not supported by evidence of stealing a sum of money, consisting of some of the coins mentioned in the indictment, without proof of some one or more of the specific coins charged to have been stolen." (See vol. 1 Greenleaf's Evidence, in note at bottom of page 86.)

It is true that a subsequent statute was passed in England, upon the subject of embezzlement, to remedy the difficulty of specific proof in such cases, but we have no such amendatory statute.

It is also true that a subsequent amendatory statute of embezzlement was passed, dispensing with the necessity of the allegation and proof of absolute ownership of the property of the principal, and providing that a qualified ownership in such cases should be sufficient, but we have no such amendatory statute; but our statute is very similar to the first original English statute, under which such great difficulties lay in the way of conviction.   But, whatever the difficulties may be of conviction under our statute as it is, the courts are only called upon to expound and enforce the statute as it is, leaving to the

Legislature to remedy the defects by additional legislation to meet the difficulty, as they have done in England.

LINDSAY, J.—The application for a rehearing in this case has been examined, and under the suggestions of the plausible and ingenious argument of the counsel for the prisoner, the opinion of the court, together with the law applicable to the case, has been critically revised.

It was not because the court overlooked the bill of exceptions taken to the ruling of the judge in refusing to exclude the evidence of the chief of police—that the notice of the exception was pretermitted in the opinion. But it was because the evidence itself was in the statement of facts, upon the whole and every part of which, this court was necessarily required to form its judgment. The evidence was before the court, and it was compelled to judge of it in the gross and in detail. The statement of the chief of police, which was objected to, was to explain the reason of his action, founded upon his belief and that of others, of the guilty agent in arresting the prisoner. Such belief is always implied in every arrest upon a criminal accusation. The exception was not overlooked. But it was conceived, it was impossible for the jury to base their conclusion of the guilt or innocence of the prisoner upon such statement.

The learned counsel overlooked the provision of the Criminal Code which makes " embezzlement " nothing more than a grade of " theft." The fifth sub-division of Art. 3096, Paschal's Digest, says : " Theft includes all unlawful acquisitions of personal property punishable by the Penal Code." Then the *law of trial,* in a case of theft, applies also to a case of embezzlement. The difference between them is only in the facts and circumstances under which they are committed. The punishment is the same in each. Embezzlement is certainly not a common law offense. But our statute, in making it an offense, consigns it to the evil family of thefts, and subjects it to the same methods of repression and punishment. Another

thing must be observed and remembered, that Article 2491,. Paschal's Digest, says : " The provisions of this (the Criminal) Code shall be liberally construed, so as to attain the objects intended by the Legislature—the prevention, suppression and punishment of crime." This is the *desideratum* which was sought to be attained by the Legislature by the various innovations made upon the common law in the Code. It is the business of the courts to construe these laws in the spirit with which they were enacted. If this is done, there is but little danger of compromising the innocent, while there will be more certainty in accomplishing the object of these emendations of the law by the prevention, suppression and punishment of crime. Every technical advantage which the criminal law of the State allows, in its present state, was granted to the prisoner upon his trial, and a jury of his own selection, upon testimony, which satisfies the mind of this court, has found him guilty ; and in revising the opinion already given, with the aid of the argument furnished in the application, the court can see no cause for changing its opinion.

The rehearing is refused.

Rehearing refused.