J. Parchman *v*. The State.

1. Jeopardy Under Former Indictment.—However conflicting in many respects the adjudications on former jeopardy, they generally concur in holding that such jeopardy can present no defense to a second indictment unless it charges the same offense as that charged in the first one.

2. Same.—A party may legally be tried on a second indictment, based upon the same facts as the previous one, if the first indictment was so defective that no valid judgment could have been rendered on it, or if it was tried by a court having no jurisdiction; or if the jury impaneled under it was lawfully discharged before verdict; or if such jury found a verdict against the defendant, and he had it set aside on his motion for a new trial ·or in arrest of judgment.

3. Same.—That the second indictment differs from the first one in form cannot deprive the accused of his defense of former jeopardy if both are based upon the same facts, and if the first indictment was such that the accused might lawfully have been convicted under it on proof of the same facts as those by which the second is to be sustained. But if the two indictments are so diverse as to preclude the same evidence from sustaining both, the jeopardy is not the same.

4. Same—Case in Judgment.—By a first indictment the accused was charged with the theft of a gelding belonging to H. *Franks;* by a second indictment he was charged with the theft of a gelding belonging to H. *Frank.* Held, that *Franks* and *Frank* are neither the same name nor *idem sonans,* and, therefore, the indictments charge different offenses, and jeopardy under the first is no defense against the second.

5. Practice—Nolle Prosequi.—Though the act of 1876, "to regulate the duties of county attorneys," prohibits the dismissal of a prosecution unless a written statement of his reasons for the dismissal be filed by the county attorney, yet if, with the permission of the judge, though against the protest of the accused, the county attorney has judgment of dismissal entered without filing such statement, the omission of the statement is not available to the accused against a subsequent indictment.

6. Theft—Charge of the Court.—In a trial for theft the court charged the jury as follows: "If you believe from the evidence that the defendant bought the gelding mentioned in the indictment from another, under the real and honest, though mistaken, belief that the same was the property

of such other person, you will find him not guilty." *Held*, that this was calculated to impress the jury that the accused was required to prove that he entertained such belief; and it was, therefore, error to refuse the requested instruction that they could not convict for theft if they believed the accused bought the gelding after it had been stolen by some one else.

7. DEGREES OF THEFT—RECEIVING STOLEN PROPERTY.—Inasmuch as Article 631 of the Code of Criminal Procedure (Pasc. Dig., Art. 3096) specifies theft as one of the offenses which include different degrees, and declares it to comprise all unlawful acquisitions of personal property punishable by the Penal Code, this court concludes that, under an indictment for theft, a conviction may, with sufficient proof, and under proper instructions, be had for fraudulently receiving stolen property, knowing it to be stolen.

8. EVIDENCE OF ADMISSIONS UNDER ARREST.—Over objection by the accused, a state's witness was allowed to testify that while he had the accused in custody, under a different accusation, the accused told him he was on his way to a place in Louisiana. *Held*, that the testimony should not have been admitted.

9. PETIT JURORS—CAUSE FOR CHALLENGE.—That a petit juror had heard the evidence adduced at a previous trial of the same case is not cause for challenge.

APPEAL from the District Court of Harrison. Tried below before the Hon. A. J. BOOTY.

The most material facts are either stated or clearly indicated in the opinion of this court.

The indictment contained the ordinary allegations of caption and asportation, without any special characteristics of an indictment for receiving stolen property.

The proof showed that the gelding was allowed to run at large, and, after failing for several days to make his habitual appearance at his owner's premises, was next seen carrying the accused, who had been arrested upon some other charge which is not disclosed in this record, and pending which he stated to his custodian that he was on his way to Keachi, Louisiana. There was no evidence connecting the accused with the taking of the gelding from the range other than his possession of him.

In behalf of the accused his mother testified that she gave him money to buy a horse, and, troubled with some

doubt how he would apply the money, followed him and saw him obtain from a strange man the animal now in question, and saw him hand to the strange man something which she took to be the money she had given him.

The jury returned a general verdict of guilty, and gave the accused seven years' service in the penitentiary.

*Alex. Stedman* and *Alex. Pope*, for the appellant. It was contended on the trial, and is now contended, that the defendant, with the discharge of the jury, was entitled to his discharge, and should have been discharged on motion.

The provision of the Constitution of the United States,. " Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb," has been incorporated in our state Constitution, and reaffirmed in adoption of the Code of Criminal Procedure, and is justly regarded as the very bulwark of the liberty of the citizen.

For a correct understanding of this clause of our Constitution we should understand the meaning of the word jeopardy. Webster says that it means " exposure to death,, loss, or injury ; hazard ; danger ; peril."

But, in our seeking to arrive at the true meaning of our Constitution, we are met by a clause of our Criminal Procedure that tells us that " no person shall be twice put in jeopardy," etc., which is intended to mean that no person can again be subjected to a second prosecution for the same offense, after he has been prosecuted and convicted in a court of competent jurisdiction (Code Cr. Proc., ch. 1, sec. 18) ; and that it will exempt no person convicted on an illegal indictment, or when a jury is discharged without a verdict (Code Cr. Proc., ch. 1, Art. 19) ; and then it immediately tells us a wonderful truth, that a person, after acquittal, can be prosecuted no more for the same offense of which he was acquitted. That the legislature has no right to say what the clause of our Constitution means is.

evident from the fact that their province is to make laws, and the court to construe the meaning ; this, we take it, is well settled, and will not be denied. For the legislature may pass a law, and if the courts think that it is unconstitutional they will so decide. We then take it that this honorable court will not notice the construction which the legislature has placed upon our Constitution, but will decide what they honestly believe to be the meaning of the clause alluded to. For it would be an unheard-of proposition that courts cannot decide a law to be unconstitutional. That a person cannot again he arraigned for trial on the same offense, after a verdict of not guilty, is a principle that has long since been settled by judicial decisions, for a person could plea it in bar of a second prosecution.

If the legislature has put the proper construction to our Constitution, why incorporate into our Bill of Rights, as a great rule that must never be deviated from, that no person shall be twice put in jeopardy of life or liberty? We would have a clause in our Constitution that would mean nothing.

Why was this clause ever ingrafted into the organic law of our state? It was for the purpose of protecting her citizens from frequent and vexatious prosecutions upon insufficient grounds. It is one thing certain, that if once placed in jeopardy, if but for a moment, he can never be placed there again for the same offense. The question then presents itself, What is jeopardy, and at what point in a criminal case does it begin? Jeopardy, as we have said, is to expose to death, loss, or injury ; hazard ; danger ; peril. Then, if to expose to danger is jeopardy, at what point does it commence in a criminal trial? It commences the minute that a prisoner is arraigned upon a good indictment, and his jury impaneled, sworn, and charged ; then he is exposed to the penalty that the law affixes to the offense, and is in danger of injury.

The Bill of Rights of our Constitution says :  " No per-

son for the same offense shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction."

A wide difference of opinion has existed as to when jeopardy attaches, within the meaning of this constitutional rule. In many of the states it has been held to attach when the jury is sworn, and if a jury is afterwards discharged without rendering a verdict, except in a few instances, such as consent and the act of God, such separation or discharge is a bar to subsequent proceedings. *Com.* v. *Cook*, 8 Serg. & R. 577; *Mahala* v. *The State*, 10 Serg. & R. 532; *Ned* v. *The State*, 7 Port. 188; *Wright* v. *The State*, 5 Ind. 292. The court, in each of the cases cited, founded its opinion on the assumption that to be on trial was to be in jeopardy within the meaning of the rule. In our state the jury may be discharged if they cannot agree, but discharge must be in conformity to our laws. But, were it an open question in our state, it might well be doubted to which side the weight of reason would incline the beam. But either position sustains the theory of the defendant in this case; for, whatever diversity of opinion has existed among the learned judges as to the right and power of courts to discharge juries from giving any verdict except in cases of extreme necessity, all of them agree that the party is, in legal sense, in jeopardy when a lawful jury has once been charged with the case, upon a good indictment, and, without the consent of the party upon whom the jeopardy has attached, no step in the proceedings can be taken backwards. Bishop's Cr. Law, 658.

The principle secured is but a constitutional recognition of a maxim imbedded in the very element of the common law, "that a man shall not be brought into danger of life for one and the same offense more than once." It has ever been deemed a privilege of inestimable value to the citizen,

and was, to use the language of Justice Story, "introduced into the Federal Constitution upon the soundest principle of prudence and justice." As soon as a jury is sworn to try a prisoner his fate is in their hands, and he stands in jeopardy of his life and liberty. He is, in the truest sense, put upon his delivery from peril. If their verdict be against him, the modern authorities agree that there may be a new trial on his own motion; as the guarantee is to him he may waive it. *People* v. *McKay*, 18 Johns. 212; 5 Gratt. 675; *The People* v. *Olwell*, 28 Cal. 456. Granting a new trial is proof that errors were committed upon the first; yet, notwithstanding these errors, that the defendant was, in its legal sense, in jeopardy on the first trial follows as a logical result from the only theory upon which a new trial is ever permitted, *i. e.*, that the defendant may waive the guarantee of the rule or maxim, and consent again to be placed in jeopardy. 1 Bishop's Cr. Law, 657, 672.

The construction of this constitutional provision was well settled by a uniform course of decisions, long before its incorporation into our state Constitution; hence we must presume the provision was incorporated and adopted with a full knowledge of the judicial interpretation which similar provisions in other previous Constitutions had uniformly received, and with intent to adopt such interpretation as a principle expressed in the organic law of the state. *Thomas* v. *The State*, 40 Texas, 36.

Again, in the application of this principle, it is upon reason and authority quite as well established that, when a party is once placed upon his trial for a public offense, on a valid indictment, before a competent court, with a competent jury duly impaneled, sworn, and charged with the case, he has then reached and is placed in the jeopardy, from a repetition of which, upon the same indictment, or any other indictment for the same offense, this constitutional shield forever protects him; and, after the jeopardy has once so

attached, a discharge of the jury without the consent of the defendant, for any cause, before they have rendered a verdict, is equivalent to a verdict of acquittal.

*The State* v. *McKee*, 1 Bailey, 651; *Com.* v. *Cummings*, 3 Cush. 212; *The State* v. *Kittle*, 2 Tyler, 471; *The State* v. *Davis*, 4 Black, 346; *The State* v. *Bauche*, 5 Black, 154; *The State* v. *Johnson*, 8 Ind. 533; *Com.* v. *Wade*, 17 Pick. 395; *Weinzorphlin* v. *The State*, 7 Black, 186; *Wright* v. *The State*, 5 Ind. 290; *Esmen* v. *The State*, 1 Swan, 14; *Campbell* v. *The State*, 9 Yerg. 333; *The State* v. *Reynolds*, 4 Hayw. 110; *Slaughter* v. *The State*, 6 Humph. 410; *The State* v. *Taylor*, 1 Hawks, 462; *The State* v. *Hand*, 1 Eng. 169; *The People* v. *Comstock*, 8 Wend. 549; *The People* v. *Coming*, 2 Comst. 9; *The State* v. *Brown*, 16 Conn. 54; *The State* v. *Anderson*, 3 Smed. & M. 753; *The State* v. *Spear*, 6 Mo. 644; *The State* v. *Callendine*, 8 Iowa, 290; *The State* v. *Kanause*, 1 Spen. 115; *The State* v. *De Hast*, 2 Halst. 172; *Com.* v. *Cook*, 6 Serg. & R. 578; *The People* v. *Webb*, 38 Cal. 477; *Com.* v. *Harrison*, 2 Va. Cas. 202; *United States* v. *Gilbert*, 2 Sumn. 37; *United States* v. *Shoemaker*, 2 McLean, 114; 1 Chitty Cr. Law, 657; 2 Russ. on Cr. 726; Archb. Cr. Pl. 619; 2 Whart. Cr. Law, sec. 3054; Bishop's Cr. Law, sec. 658 *et seq.*; Ex parte *Hartman*, 38 Cal. 32; *The State* v. *Lee*, 7 Am. Law Rep. 651.

Then, was the jury legally discharged in this case? We think not.

Section 20 of the act regulating duties of county attorneys, approved August 7, 1876, says: "The county attorney shall not dismiss a case unless he shall file a written statement with the papers in the case, setting out his reasons for such dismissal, which shall be incorporated in the judgment of dismissal." The court will see, from the plea of jeopardy and the bill of exceptions, that the judgment of

the court, a copy of which is attached to said plea, states that the defendant objected to the *nolle prosequi* because there were no sufficient reasons given to the court in writing, as the law requires; which was overruled by the judge presiding. It was urged then, and is now urged, that the court could not let the county attorney enter a *nolle prosequi* unless he filed his reasons in writing; yet the honorable judge allowed the county attorney, over the objection and urgent protest of the defendant, to "*nol-pros*" the case, committing, as we think, an error in direct conflict to our statute, and illegally discharging the jury when the defendant was in jeopardy—amounting, as we think, to an acquittal. The clause of our statute is mandatory, and cannot be departed from. Why enact a statute unless we are to conform to it, and when a prisoner is put upon trial he has thrown around him all the protecting care of the law? And as Chief Justice Roberts said in the case of *Matthews* v. *The State*, 44 Texas, 376, "that, however certainly a man may be guilty of an offense, he must not be punished for it until he is convicted according to the forms of law." We are aware of the decision of Judge Ogden in the case of *Mosely* v. *The State*, 33 Texas, 671, and of *Taylor* v. *The State*, but, as neither of those cases resemble the defendant's case, we will not comment upon them.

In our opinion the charge of the court did not correctly state the law applicable to this case. This objection, which is embraced in the appellant's 2d assignment of errors, goes as well to errors of commission as to those of omission.

The defendant, be it observed, is not charged with receiving stolen property, knowing it to have been stolen, and, as he is not charged, he cannot be convicted therefor.

The defendant, who stands indicted for the offense of theft, cannot be convicted of receiving stolen property, under Article 2382, Paschal's Digest, we maintain on the ground that the *allegata* and the *probata* must correspond. The

reason of the rule that the *probata* must agree with, and be in support of, the *allegata* is that the person charged with an offense shall not be taken by surprise, and have proved against him a charge of the nature of which he was not apprised, and to which, therefore, he did not have an opportunity to prepare a defense.

The distinction between a taking of property, and a receiving of it subsequent to the taking, is manifest. It cannot be successfully maintained that, as " theft includes all unlawful acquisitions of personal property punishable by the Penal Code " (Pasc. Dig., Art. 3096), a person indicted for the specific offense of theft can be convicted of any unlawful acquisition of personal property, such as receiving stolen property, swindling, etc., for we have a judicial interpretation of the statute to the contrary. We refer to the case of *Cline* v. *The State*, 43 Texas, 497, in which it is held that, the defendant being indicted for theft, evidence showing that the offense of swindling had been committed would not sustain the indictment. Swindling is within the category of unlawful acquisitions of property. Whether an indictment could be so drawn as to include both theft and receiving stolen property, without being obnoxious to the objection of duplicity, it is not for us to determine. It is sufficient to know that the pleader has displayed no such ingenuity in this case.

If the foregoing views are correct, the instruction being discussed is erroneous, and, therefore, the judgment should be reversed.

The jury in this case simply returned a verdict of guilty. In the absence of any expression by them indicating the contrary, it must be understood that they find him guilty as charged in the indictment. If, under the indictment herein, the defendant could be convicted of receiving stolen property, knowing its fraudulent acquisition, and the jury intended to so find, they should have found him not guilty ·

of the theft, but guilty of the other offense.    Pasc. Dig.,
Art. 3095.

But admitting that, under the indictment herein the
defendant could be convicted of receiving stolen property,
the law relative thereto is not correctly charged.    To be
convicted of this offense it must be shown that when he
received the property he knew it to have been stolen.
Pasc. Dig., Art. 2383.    We submit that a suspicion or
belief on his part, not amounting to knowledge, would not
suffice.    As before shown, the judge in effect told the jury
that, unless the defendant had a real and honest belief that
the gelding was the property of the vendor, they could not
acquit him.

*George McCormick*, Assistant Attorney General, filed a
very able brief in reply.

ECTOR, P. J.    The defendant, Jerry Parchman, was tried
and convicted at the October term, 1876, of the district
court of Harrison county, for the theft of a gelding, and
his punishment was assessed at seven years' confinement in
the state penitentiary.

One of the errors assigned is that the court erred in over-
ruling defendant's plea of jeopardy.    An examination of the
record will show that Jerry Parchman, the defendant, was
first indicted for stealing a gelding, the property of one H.
Franks ; that he was arraigned on the first indictment, and
pleaded not guilty ; that a jury was impaneled and sworn as
required by law, and the testimony of the state's witness
H. Frank went to the jury, when it was discovered from his
evidence that this witness' name was *H. Frank*, and the
animal stolen was charged in the indictment to be the prop-
erty of *H. Franks*.

The attorney prosecuting for the state, with the consent
of the court, without giving any reason therefor, and over

the protest of the defendant, ordered a *nolle prosequi* entered in the case, which was done. On the same day the grand jury of Harrison county found a new bill of indictment, and filed the same in said district court, against the defendant, charging him with the theft of a gelding, the property of H. Frank.

On this last indictment the defendant was tried and convicted. Defendant filed his plea of jeopardy; and, in support of this motion, he insisted before the district court, and now before this court, that with the discharge of the jury he was entitled to his discharge, and should have been discharged on his said motion; that he for the same offense could not be twice put in jeopardy of life or liberty.

Article 1, section 14, of the Constitution of this state provides that "no person for the same offense shall be twice put in jeopardy of life or liberty; nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction."

The Code of Criminal Procedure (ch. 1, sec. 18) reads as follows: "No person shall be twice put in jeopardy of life or limb." This is intended to mean that no person can be subjected to a second prosecution for the same offense, after having been once prosecuted in a court of competent jurisdiction and duly convicted.

"Art. 19. The foregoing Article will exempt no person from a second trial who has been convicted upon an illegal indictment or information, and the judgment thereon arrested; nor when a new trial has been granted to the defendant; nor where a jury has been discharged without rendering a verdict; nor for any cause other than a legal conviction.

"Art. 20. By the provision of the Constitution, an acquittal of the defendant exempts him from a second trial for the same offense, however irregular the proceedings may have been," etc.

There has been quite a conflict of opinions in this country on the question raised in this motion. In a number of the states it has been held that when a jury has been discharged without consent, before verdict, after having been sworn and charged with the offense, under a good indictment, this may bar a second prosecution for the same offense, by a special plea made by the defendant setting forth the fact that he has already been put in jeopardy for the same offense. Others hold a different rule.

The different decisions on this question may be put under two different classes, the first holding that any discharge of the jury, except in cases of such violent necessity as may be considered the act of God, is a bar to all subsequent proceedings ; and the second holding that the discharge of the jury is a matter of sound discretion for the court, and that when, in the exercise of a sound discretion, it takes place, it presents no impediment to a second trial. On one point they pretty generally agree—that the two indictments must be for the same offense before the jeopardy can attach.

We believe, after a careful examination of the authorities, that if the court had no jurisdiction of the cause, or if the indictment was so defective that no valid judgment could be rendered upon it, or if by any regular necessity the jury are discharged without a verdict—which might happen from the sickness or death of the judge of the court, or the inability of the jury to agree upon a verdict after sufficient deliberation and effort—or if the term of the court as fixed by law comes to an end before the trial is finished, or the jury are discharged with the consent of the defendant, expressed or implied, or if, after verdict against the accused, it has been set aside on his motion for a new trial or in arrest of judgment, the accused may, in all such cases, again be put upon trial for the same facts charged against him, and the proceedings had will constitute no protection.

But, when the legal bar has once attached, the government

cannot avoid it by varying the form of the indictment. If the first indictment was such that the accused might have been convicted under it on proof of the facts by which the second is sought to be sustained, then the jeopardy which attached on the first must constitute a protection against a trial on the second.

The main question to be considered on this branch of the case is this : Is the offense charged the same in both indictments? For the protection we have been considering extends only to cases in which the offense in the two indictments is the same. If the two indictments are so diverse as to preclude the same evidence from sustaining both, the jeopardy is not the same. It will be remembered that the first indictment was dismissed because of a mistake in the name of the owner of the stolen property.

Mr. Bishop says that " an indictment does not always in fact charge the offense which the person drawing it intended. For example, cases of variance may come under this head. Thus, if it alleges the forgery of a receipt for the use of Hugh *Brison*, and the instrument produced in evidence is for the use of Hugh *Prison*, or the burning of Josiah Thompson's barn, while the true owner was Josias Thompson, * * * or the like cases, the defendant, being acquitted by reason of the variance, is liable to be prosecuted on a new indictment in which the matter is truly alleged." Bishop's Cr. Proc., sec. 1052.

In the case of *Swindell* v. *The State*, decided by our supreme court, the appellant was indicted for the stealing of a horse ; the proof showed that the property stolen was a gelding. The district attorney, after the jury had been impaneled, the evidence closed, and the argument of counsel concluded, said he would not further prosecute the suit, whereupon the following judgment was entered up : " It is therefore considered by the court that the defendant, Jo Swindell *alias* Jo Thompson, go hence discharged, and

that the state of Texas take nothing by this prosecution; and it appearing to the court from the evidence adduced that the defendant is guilty of stealing a gelding instead of a horse, and on application of the district attorney, it is ordered that said defendant be recognized." The defendant, in default of bail, was committed to jail, and he applied for a writ of *habeas corpus*, which was granted. The court below, on hearing the testimony, remanded the accused to the custody of the sheriff, and the supreme court, on appeal, sustained the decision of the lower court. 32 Texas, 102. See, also, the case of *Wilson* v. *The State*, 45 Texas, 76.

If the name proved in the second indictment be *idem sonans* with that in the first indictment, the variance will be immaterial. (See the examples collected by Mr. Wharton, and the rulings of the courts in them, in determining whether the name proved be *idem sonans* with that charged in the indictment. 1 Whart. Cr. Law, sec. 57.) The court properly overruled defendant's plea of former jeopardy. The name of "Frank" and "Franks" are not *idem sonans*.

The prosecuting attorney for the state ought not to have been allowed to dismiss the cause based on the first indictment without filing a written statement with the papers of the case, setting out his reasons for such dismissal, and having the same incorporated in the judgment, as provided for in section 20 of an act passed by the fifteenth legislature (to be found on pages 88 and 89 of its General Laws), entitled "An act to define and regulate the duties of county attorneys."

The principal object of this section of said act was to prevent county attorneys from compromising with offenders. The failure of a county attorney to file such written statement, in a case in which a *nolle prosequi* is entered, we do not

believe would entitle the defendant to an acquittal in any subsequent prosecution against him.

The defendant assigns as error the action of the district court in overruling his motion for a new trial. One of the grounds in his motion for a new trial is that the court erred in its charge to the jury. The counsel for the defendant say that in the following instructions given to the jury the court committed an obvious error, and one which was well calculated to prejudice the rights of the defendant, viz. : " If you believe from the evidence that the defendant bought the gelding mentioned in the indictment from another, under the real and honest, though mistaken, belief that the same was the property of such other person, you will find him not guilty." They further say that the converse of this proposition is: " If you believe from the evidence that the defendant bought the gelding mentioned in the indictment with the belief or suspicion that the same was not the property of such person from whom he purchased it, you will find him guilty."

It would be quite natural that this would be the view taken by the jury of the charge as given, and that this instruction imposed on the defendant the necessity of showing a real and honest belief on his part that the gelding belonged to the man from whom he purchased it. Under the instructions of the court the jury could not find the defendant guilty of receiving stolen property, knowing the same to have been stolen. This being the case, we believe the court should have given the last special instruction asked by the defendant, viz. : " That if the defendant purchased the horse or animal charged to have been stolen, though the horse had been originally stolen by some one else, you must acquit the defendant."

We are inclined to think, when a defendant is indicted for theft, and the evidence shows that he did not steal the prop-

erty described in the indictment, but that he, knowing it to have been stolen, did fraudulently receive the same, that he, under proper instructions from the court, might be convicted for receiving stolen property, knowing the same to have been so acquired. This belief is based upon Article 3096, Paschal's Digest of the Laws:

"Art. 3096. The following offenses include different degrees: 1. Murder, which includes all the lesser degrees of culpable homicide. * * * 5. Theft, which includes all unlawful acquisitions of personal property punishable by the Penal Code," etc. *Riley* v. *The State*, 32 Texas, 771.

The case of *Cline* v. *The State*, to which our attention has been called by the attorneys for the defendant, does not give a different interpretation of the statute. The case referred to decides that a person indicted for theft cannot be convicted of theft when the evidence shows that he is guilty of swindling. It will not be seriously insisted that a purchaser would be guilty of theft who, being in need of a horse, bought one from a stranger, with a doubt as to his ownership, and no means of ascertaining the fact, with an honest purpose of keeping the animal until some one else should prove ownership.

The defense relied on in this case is that the defendant purchased and paid for the gelding in the city of Marshall, paying a fair value for him in money; and on the trial he introduced some evidence for the purpose of supporting this defense. Under proper instructions from the court, it is the province of the jury to determine as to whether or not the evidence is sufficient to raise in the minds of the jury a reasonable doubt of the defendant's guilt.

Counsel for the defendant have certainly labored ably and well for their client. In this case, as in all others, we have tried to look beyond the individual on trial, to those general rules and principles created and established to elicit the

truth of the issue, and have not been unmindful of the con-sequences which may result from our decision.

What the defendant said while under arrest, as to where he was going, having been objected to by the defendant's counsel, should have been excluded from the jury.

The court, in refusing to allow the defendant to challenge for cause those upon the jury who had heard the evidence given in on the previous trial, did not, so far as the record shows, deprive the defendant of any legal right. See General Laws Fifteenth Legislature, 83; *Bowman* v. *The State*, 41 Texas, 417; *Shaw* v. *The State*, 27 Texas, 754; *Brill* v. *The State*, 1 Texas Ct. of App. 572.

The judgment of the district court is reversed and the cause remanded.

*Reversed and remanded.*